IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NATHAN SAMUEL COLLETT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF UTAH, et al.,<br><br>Defendants. | **REPORT AND RECOMMENDATION**<br><br>Case No. 2:14-cv-00871-DB-PMW<br><br>District Judge Dee Benson<br><br>Chief Magistrate Judge Paul M. Warner |

District Judge Dee Benson referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] The court recognizes that Plaintiffs Nathan Samuel Collett ("Collett"), and Richita Hackford and Opal Hackford (together, the "Hackfords") (Collett and the Hackfords are referred to collectively as "Plaintiffs") have been permitted to proceed *in forma pauperis* under 28 U.S.C. § 1915 ("IFP Statute").[2] The court also recognizes that Plaintiffs are proceeding pro se in this case.  Consequently, the court will construe Plaintiffs' pleadings liberally.  *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). Before the court is the screening of Plaintiffs' Consolidated Amended Complaint ("Amended Complaint")[3] under the authority of the IFP Statute. After carefully considering the Amended Complaint and as outlined below, the court recommends this action be dismissed for failure to state a claim upon which relief may be granted. The remaining motions[4] filed by Plaintiffs, therefore, should be denied or deemed moot.

---

[1] *See* ECF No. 5.
[2] *See* ECF No. 2.
[3] *See* ECF No. 14.
[4] *See* ECF Nos. 15, 16, 17, 18.

**LEGAL STANDARD**

At the outset, the court will provide an explanation of the applicable standards for reviewing a complaint under the IFP Statute. Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and further provides that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

Whenever the court authorizes a party to proceed without payment of fees under the IFP Statute, the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In determining whether a complaint fails to state a claim for relief under the IFP Statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007). Under that standard, the court "look[s] for plausibility in th[e] complaint." *Id.* at 1218 (quotations and citations omitted) (second alteration in original). More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)) (other quotations and citation omitted) (second and third alterations in original).

2

In undertaking that analysis, the court must be mindful that Plaintiffs are proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187. At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," *Bellmon*, 935 F.2d at 1110, and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Further,

> [t]he broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted). Finally, pro se litigants are often given an opportunity to remedy the defects in their pleadings. *See, e.g., Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990); *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985).

## PROCEDURAL HISTORY

This case was consolidated with *Hackford v. State of Utah*, case no. 2:14-cv-00873.[5] On February 26, 2019, after reviewing Plaintiffs' alleged claims, the court issued a Memorandum

---

[5] *See* ECF No. 10.

Decision and Order ("Order").[6] In the Order, the court screened the original complaints under the authority of the IFP Statute and concluded that the original complaints failed to state claims upon which relief could be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Nevertheless, out of an abundance of caution and fairness to Plaintiffs, who are proceeding pro se, the court provided Plaintiffs an opportunity to amend and directed Plaintiffs to file a consolidated amended complaint that remedied the defects described in the Order. On March 15, 2019, Plaintiffs filed an Amended Complaint.[7]

## BACKGROUND

The following facts are taken from the court's liberal reading of Plaintiffs' Amended Complaint which is generally vague and difficult to decipher. Plaintiffs are United States citizens, residents of the Uinta Valley Reservation, and members of the Uinta Valley Shoshone Tribe of Utah Indians. The Uinta Valley Shoshone Tribe is not a federally recognized American Indian Tribe. Plaintiffs' Amended Complaint relates directly to this lack of recognition. In brief, Plaintiffs claim that members of the Uinta Shoshone were included upon a list of "mixed-blood"[8] members of the Ute tribe in the 1950s. Those on this mixed-blood roll had their federal recognition as American Indians terminated through the Ute Partition and Termination Act of 1954 ("Act"). The termination of Plaintiffs' status as federally recognized Indians resulted in, *inter alia,* the loss of federal supervision over Plaintiffs' property and the ability to receive

---

[6] *See* ECF No. 13.
[7] *See* ECF No. 14.
[8] The court refers to the same designation as the parties use and that appears in the statute at issue.

certain federal services and benefits, affected land boundaries, and subjected Plaintiffs' to state law as Utah citizens.[9]

A generous reading of the Amended Complaint suggests that Plaintiffs allege the Act was fraudulently enacted, and that unspecified tribal rights are being violated by various actors acting under false authority and false pretenses in an attempt to deprive Shoshone tribal members of their interest in the Uinta Valley and Ouray Reservation and their right to tribal self-government. Plaintiffs seem to argue that the Act is legally flawed, the UDC is not legitimate, and various state actors are illegally enforcing state law against them. In general, Plaintiffs seek to challenge the legality and implementation of the Act, and certain events that occurred to them as a result of their federal Indian status having been terminated. Plaintiffs bring 17 claims against various defendants. All but one claim relates to the implementation of the Act and to their lack of federal Indian status.

Collet asserts and confirms his claims against the named defendants for "Child Endangerment, Willful Abduction, and Withholding, and Separation of Minor Children from"

---

[9] An excellent summary of the Act that is helpful to understanding the historical events upon which the Amended Complaint is grounded, and that Plaintiffs seek to challenge, is provided in *Maldonado v. Hodel*, 683 F. Supp. 1322, 1323 (D. Utah 1988), *aff'd*, 977 F.2d 596 (10th Cir. 1990), and in the Supreme Court's opinion in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 133–39 (1972). As relevant to this order, it is only necessary to state that the Act provided, among other things, for the termination of mixed-blood Ute Indians as federally recognized Indians and for the partition and distribution of the Ute Indian Tribal assets of the Uintah and Ouray Reservation in Utah between the mixed-blood group and full-blood Ute Indians. *See* 25 U.S.C. § 677. Under the distribution plan prepared by the mixed bloods and approved by the Secretary, the mixed bloods each received, in addition to their share of divisible tribal assets, ten shares of the Ute Distribution Corporation ("UDC"), which was formed by the mixed bloods to manage their share of income from oil, gas and mineral rights and other tribal assets that were not susceptible to equitable and practicable distribution. *See Affiliated Ute Citizens,* 406 U.S. at 136. Upon distribution of these shares and divisible tribal assets, the Secretary, as provided in the Act, terminated Plaintiffs and other mixed-blood Ute Indians as federally recognized Indians. *See* 26 Fed. Reg. 8042 (Aug. 24, 1961). This termination proclamation also terminated the federal trust over the mixed bloods' property. *Id.; see Affiliated Ute Citizens,* 406 U.S. at 149–50.

Collett, their father.[10] Collett also recites and confirms a list of the other claims Collett alleges against individual defendants. These claims are as follows:

- "deprivation and removal from Plaintiffs [sic] home, by BIA officer Wasp (Wass) Chapoose";[11]

- "unlawful issuance of Ex Parte Temporary Protective Order, Protective Order, Child Custody Order including unlawful taking of hair samples for drug testing on all four minor children" against "Cleve Hatch, Ute Social Service attorney";[12]

- "unlawful enforcement of Supervised Visitation Order by Cleve Hatch Ute Social Service state attorney without legal authority to do so" against "Daniel Roper, Ute Family Service Counselor";[13]

- "abduction an[d] kidnapping and assault with intent to cause physical bodily harm and injury to the Plaintiff Nathan Samuel Collett, unlawful impound of vehicles," against "Defendants' State of Utah 'Roosevelt Police Chief Rick Harrison, Roosevelt Police Detective Pete Butcher, Roosevelt Police officers Casey Ralphs, Matt Molay, and Utah Highway Patrol officer Luke Stradinger";[14]

- "assault with intent to cause physical bodily harm and injury to the Plaintiff Nathan Samuel Collett" against "Duchesne County Jail Prior Sheriff's Deputy Wallace Hendricks";[15]

---

[10] ECF No. 14 at 10.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

- against "COP-Corporation of the President of the Church of Jesus Christ of Latter-day Saints, COP-President's one man government, by and through its corporate arrogates memberships involvement in the creation and drafting of the Ute Partition and Termination Act of 1954,[]COP-as a holder of 800 Ute Distribution Stock-Shares, under the Act of 1954 a as Mormon State government, being the majority of state, county and city employees within the Uinta Valley & Ouray Reservation";[16] and

- against the "Ute Indian Tribe for falsely misleading and representing itself as a federal tribe, for the taking of Federal Indian Monies under Federal Services & Programs for which the state Utes are not eligible to be receiving, a holder of 820 Stock-Shares in Ute Distribution Corporation."[17]

The Hackfords allege and confirm the following claims against the named defendants:

- "against Defendants for having placed Plaintiff Richita Hackford's name on a Mixed-blood Ute Roll and for having published her name in the Federal Register on August 5, 1956 as an Affiliated Ute Citizen of the State of Utah";[18]

- against "United States Department of Agriculture, Farmers Home Administration, Duchesne County, Duchesne County prior Supervisor Kelly Crozier, Request for Quitclaim Deed on Fee Simple land, said Quitclaim is not a 'clear title' and for the Excepting Therefrom: Beginning at the Northeast corner of Lot 6, Block 5, ORSER SUBDIVISION, Roosevelt City Survey; thence West 35 feet, more or

---

[16] *Id.* at 14.
[17] *Id.* at 16.
[18] *Id.* at 11.

less to an existing fence; thence South 93 feet, more or less to an existing fence;

thence East 35 feet, more or less to an existing fence; thence North 93 feet, more

or less to the pint of beginning, for having Initialed Plaintiffs initial RH on the

Real Estate Deed of Trust For Utah and Nevada . . . without Plaintiffs knowledge

or consent," and for "[l]oss of real property Neola Utah, to a state Uncompahgre

Ute, Warranty Deed is not a 'clear title";[19]

- against "Roosevelt City Police Detective Pete Butcher for simple assault

  abduction removal from Plaintiffs [sic] residence, unlawful transport to Roosevelt

  Police Department, unlawful detaining an[d] harassment, unlawful taking of

  personal property";[20]

- "Plaintiff Opal Hackford for harassment intimidation instilling fear by law

  enforcement";[21]

- against "Backman Title Services, Brian A. Coleman, VP & General Counsel File

  No. 9-002210 for the unlawful 'sale' of the tribal property 'land & home' of

  "Plaintiff Richita Hackford" a Uinta Shoshone sovereign, within the Shoshone

  Uinta Valley Reservation";[22]

- against "K, LaMar Nokes, Utah State Certified License #5477410-CG00, General

  Real Estate Appraiser, for the unlawful 'state' appraisals used by Brian Coleman,

  Backman Title Services for a state market value in the amount of '$70,478.3' for

---

[19] *Id.*

[20] *Id.*

[21] *Id.* Although the Amended Complaint is not specific, the court will liberally construe this cause of action as against the "law enforcement" otherwise identified elsewhere in the Amended Complaint.

[22] *Id.* at 24.

unlawful 'state appraisals' of Plaintiff 'Richita Hackford's' a Uinta Shoshone sovereigns (land, home and outside shed) within the Shoshone Uinta Valley Reservation";[23]

- against "Mitchell Collett for the unlawful purchase of the Uinta Shoshone sovereign Plaintiff 'Richita Hackford's' (land, home and outside shed) within the Shoshone Uinta Valley Reservation";[24] and

- against "Jarell A. Dillman, Allred Brotherson & Harrington, P.C, Utah licensed attorney and legal counsel for Mitchell Collett for misrepresenting in the State-Eighth District Court in and for Duchesne County, Roosevelt Department. Mitchell Collett's false claims and unlawful purchase of said tribal property at 820 E 300 North, Roosevelt, said attorney is responsible for the unlawful 'breaking and entering' of the Uinta Shoshone sovereigns home on 'land' owned by the Shoshone Uinta Valley Shoshone Tribe within the Uinta Valley Reservation."[25]

Plaintiffs collectively assert the following claim:

- against the "State of Utah for attempts to interrupt and/or to stop [Plaintiffs'] social security [and disability] benefits. . ." wherein Plaintiffs' ". . .will show evidence with regards to their claims of *'racial and political discrimination,'* by the local COP-State, Social Security Office, Provo Utah by systematically under pretext of 'periodic reviews' initiated each time plaintiffs raised a COP State issue of their Uinta Shoshone rights, pages (5) and (6) verifiable by records from the

---

[23] *Id.*
[24] *Id.*
[25] *Id.*

COP State of Utah's Disability Determination Services and the local COP-State

Provo Social Security Office Records that initiated said harassing periodic

reviews."[26]

## DISCUSSION

### I.      Amended Complaint Screening

The court has carefully reviewed the claims set forth in the Amended Complaint and

concludes that Plaintiffs fail to state a claim upon which relief may be granted. Even when

construed liberally, all seventeen causes of action suffer from fatal deficiencies. On their face,

many lack a legal basis or are legally barred, and those not legally barred lack factual support.

Claims 1–16 challenge the validity and implementation of the Act; and/or seek to enjoin state

and local authorities from enforcing state law against them.

The issues and arguments that Plaintiffs allege have been litigated, either expressly or

impliedly in *Affiliated Ute Citizens.* In *Affiliated Ute Citizens*, the Supreme Court expressly

approved of the formation of the UDC under the Act and affirmed the UDC's authority to make

decisions regarding the mixed-blood group. *See* 406 U.S. at 136, 143–44. The Court also

expressly affirmed the termination of federal supervision of the UDC and its shares. *See id*. at

149–50. Lastly, the Court recognized and affirmed that the Act itself expressly provides for the

termination of mixed-blood status as federally recognized Indians. *See id*. at 150. Other cases

that have also addressed such issues and related arguments include *Hagen v. Utah*, 510 U.S. 399

(1994), *United States v. Uintah Valley Shoshone Tribe*, 946 F.3d 1216 (10th Cir. 2020),

---

[26] *Id*. at 14.

*Hackford v. Babbitt*, 14 F.3d 1457 (10th Cir. 1994), and *Maldonado v. Hodel*, 977 F.2d 596 (10th Cir. 1990).

      Given the precedent established in these cases, the court finds that Plaintiffs have failed to state a claim upon which relief may be granted. *See, e.g.*, *Hodge v. Ocwen Loan Servicing*, No. 2:11-CV-00837-DN, 2012 WL 1434887, at *2 (D. Utah Apr. 25, 2012) (stating causes of action that have been "repeatedly rejected" by the court will not survive dismissal); *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."). Moreover, any claims involving the Act are also likely barred by the statute of limitations stated in 28 U.S.C. § 2401; however, because the court has already ruled on the claims, it is unnecessary to methodically orate the sovereign immunity and statute of limitations implications.

      Additionally, as with Plaintiffs' original complaints, even when the court liberally construes the Amended Complaint, the court concludes that the Plaintiffs have failed to provide enough well-pleaded factual allegations to support any claims for relief. Plaintiffs have again provided only conclusory allegations and failed to provide sufficiently detailed factual allegations for the court to comprehend the nature of the claims and determine whether the action should survive dismissal. In regards to the Social Security claims, Plaintiffs provide only conclusory allegations and fail to provide any detailed factual allegations whatsoever to support the allegations that the periodic review of their benefits, and certain unfavorable Social Security determinations, are the result of racial and political discrimination.

      Accordingly, the court concludes that Plaintiffs, even after being provided with an opportunity to amend their complaints, have again failed to state any claims upon which relief

can be granted. Therefore, it is hereby recommended that this action be dismissed with prejudice under the authority of the IFP Statute. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.     Plaintiffs' Motion for Preliminary Injunction and Restraining Order

Plaintiffs move the court for a preliminary injunction[27] against defendants under rule 65(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 65(a).

> It is well established that in order to obtain a preliminary injunction, the moving party must establish four factors: (1) it will suffer irreparable harm if the injunction is not granted, (2) its threatened injury outweighs the harm caused to the opposing party as a result of the injunction, (3) the injunction is not adverse to the public interest, and (4) it has a substantial likelihood of success on the merits of the case.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1258 (10th Cir. 2004). Further, "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Id*. at 1259 (quotations and citation omitted).

In this case, the court need not address all of the foregoing factors. The court has concluded that Plaintiffs' Amended Complaint in this case should be dismissed in its entirety. Accordingly, it logically follows that the court believes that Plaintiffs do not have any likelihood, let alone a substantial likelihood, of success on the merits of this case. Therefore, Plaintiffs' motion for a preliminary injunction should be denied.

## III.     Plaintiffs' Motions to Submit Evidence

In light of the court's conclusion that this action should be dismissed, all of Plaintiffs' pending motions[28] should be deemed moot.

---

[27] *See* ECF No. 15.
[28] *See* ECF Nos. 16, 17, 18.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      This action be **DISMISSED WITH PREJUDICE** in its entirety;

2.      Plaintiffs' motion for preliminary injunction[29] be **DENIED**; and

3.      All of Plaintiffs' pending motions[30] be deemed **MOOT**.

* * * * *

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

**DATED** this 10th day of February, 2020.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[29] *See* ECF No. 15.
[30] *See* ECF Nos. 16, 17, 18.